**SO ORDERED.**

**SIGNED this 16th day of November, 2020.**



_Dale L. Somers_
Dale L. Somers
United States Chief Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

Charles Frederick Alvah Anderson
Theresa Cabrini Anderson,

                  Debtors.

Case No. 15-41155-13

### Memorandum Opinion and Order
### Denying Creditor's Motion to Amend Claim and
### Granting Debtors' Application for Compensation

Debtors Charles and Theresa Anderson spent almost a year litigating

the feasibility of their Chapter 13 plan with the Chapter 13 Trustee and their

main creditor CoreFirst Bank & Trust ("CoreFirst").[1] The Court ultimately

confirmed Debtors second amended plan, and now that Debtors have

successfully completed their five years of repayment and their Chapter 13

---

[1] Debtors appear by Frank D. Taff, and CoreFirst appears by R. Patrick Riordan.

plan is nearly complete, CoreFirst seeks to amend one of its claims to add more than $17,000 in attorney fees from the confirmation battle. Debtors' attorney has also filed an application for compensation for fees incurred during that time which CoreFirst opposes, merely because it thinks it is entitled to the funds over Debtors' attorney.

The Court concludes that CoreFirst has not shown that it is entitled to its requested attorneys' fees under 11 U.S.C. § 506(b),[2] and also rejects CoreFirst's request for a post-bar-date amendment of its claim. Because the Court denies CoreFirst's motion to amend its claim to add the additional fees, and CoreFirst's only objection to Debtors' application for compensation has been overruled, Debtors' properly supported application for compensation is granted.

## I.  Findings of Fact and Procedural History[3]

Debtors filed a Chapter 13 bankruptcy petition five years ago, in November 2015. Debtors' indicated on their Schedule A that they owned three pieces of real property: (1) their residence at 1323 SW College Avenue, in Topeka, Kansas (hereinafter, Debtors' residence); (2) a rental property at

---

[2]  All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.
[3]  The Court gathered its facts from the docket in this bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket).

2

1113 SW 8th Avenue, in Topeka, Kansas (hereinafter, the single-family rental property); and (3) an eight-plex rental property at 908 NE Wabash Avenue, in Topeka, Kansas (hereinafter, the Wabash property).

Debtors indicated at filing that CoreFirst held a mortgage secured by all three pieces of property. Debtors had consistently, for more than twenty years, been current on their debt obligations to CoreFirst—they had not missed a monthly mortgage payment. But Debtors' note with CoreFirst required a balloon payment, and for reasons unknown, CoreFirst elected not to renew its loan with Debtors and filed a state court foreclosure action when the balloon payment could not be made on short notice.

CoreFirst filed two claims in Debtors' Chapter 13 case on the claims bar date. Proof of Claim No. 4 is for $129,789.12, at 7.25 percent annual interest, secured by both Debtors' residence and the Wabash property and by a commercial security agreement on personal property. The claim indicates CoreFirst is significantly oversecured, with the value of the properties listed on the claim as $249,200. Claim No. 4 is supported by a promissory note including the following language on fees:

> ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else who is not Lender's salaried employee to help collect this Note if Borrower does not pay. Borrower will be liable for all reasonable costs incurred in the collection of this Note, including but not limited to, court costs, attorneys' fees and collection agency

fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection agency fees.[4]

The note is secured through multiple documents: (1) a February 28, 2012 escrow agreement, a security agreement, and $50,000 mortgage on the Wabash property, (2) an August 12, 2005 mortgage of $20,000 on the Wabash property and Debtors' residence, (3) an October 15, 2004 mortgage of $30,000 on the Wabash property and Debtors' residence, and (4) a September 20, 2002 mortgage of $70,000 on the Wabash property. All of the mortgages have differing language regarding fees.[5] Neither of the parties addressed or

---

[4]  Claim 4-1 p.6.

[5]  The February 2012 mortgage is the most recent and the most broad, and states:
>  Whether or not any court action is involved, all reasonable expenses that Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand . . . . Expenses covered by this paragraph include, without limitation, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings . . . .

Claim 4-1 p.31. The August 2005 mortgage states:
>  Whether or not any court action is involved, all reasonable expenses that Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand . . . . Expenses covered by this paragraph include without limitation Lender's attorneys fees and Lender's legal expenses whether or not there is a lawsuit including attorneys fees and expenses for bankruptcy proceedings . . . .

Claim 4-1 p. 22. The October 2004 mortgage states:
>  Mortgager agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the indebtedness, this Mortgage and in the event Lender is made party to any litigation because of the existence of the indebtedness or this Mortgage, as well as court agency fees, or reasonable attorney fees but not both and court costs and disbursements.

Claim 4-1 p.15. The September 2002 mortgage states:

4

analyzed the language from either the note or any of the security agreements or mortgages in any way.

CoreFirst's second filed claim is Proof of Claim No. 5. Proof of Claim No. 5 is for only $3621.47, secured solely by Debtors' residence. Again, CoreFirst is oversecured, with the residence valued at $114,240. Only Proof of Claim No. 4 is at issue in this case; CoreFirst does not intend to amend Proof of Claim No. 5 in any way.

Debtors' income, and the feasibility of their Chapter 13 repayment plan, was hotly contested. The majority of Debtors' income came from Mr. Anderson's remodeling business, where he hired out to do repair and restoration work. Debtors also received income from their rental properties, and from Social Security. Ms. Anderson received some income from babysitting. Debtors amended their Schedules I and J multiple times. CoreFirst objected to Debtors' initial proposed plan and Debtors obtained an order authorizing the sale of the single-family rental property. The Court

---

In the event of default, the Lender may, without notice, and at its option, declare the entire indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof. Lender, at its option and without further demand, may thereafter foreclose this Mortgage by judicial proceeding and may invoke any other remedies permitted by applicable law or provided herein. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided by this paragraph, including, but not limited to, reasonable attorney fees and costs of title evidence all of which shall be additional sums secured by this Mortgage. Claim 4-1 p.10 ¶ 18.

then held a trial on the feasibility of Debtors' plan. At the conclusion of the first trial, the Court concluded that a second amended plan was necessary to correct a technical shortfall of $62 a month. Despite Debtors' complying with the Court's orders from the first trial and substantiating their factual averments about their ability pay in that trial, CoreFirst again objected to confirmation. As a result, a second trial was necessary. Not only did CoreFirst force the Court to endure much of the same testimony from the first trial again, but CoreFirst also subpoenaed multiple witnesses who did nothing but confirm the previously established facts. The Court ultimately confirmed Debtors' Chapter 13 plan in October 2016, nearly a year after their petition was filed. The Court specifically admonished CoreFirst that its questioning at the second trial had been repetitive, argumentative, and ineffective. CoreFirst appealed the Court's decision, but then voluntarily dismissed its appeal.

The confirmed plan required Debtors to make $3000 a month payments for six months (December 2015 through May 2016), then $3085 a month payments for the next sixteen months (June 2016 through September 2017), and finally $2900 a month payments for the last 38 months (October 2017 through November 2020). Debtors' plan did *not* treat its debt to CoreFirst as a debt secured by a principal residence, but instead treated the debt to CoreFirst as a debt secured by a non-residential real estate lien being

modified through the plan. Under those provisions, CoreFirst would be paid the amount of its claims through the plan at the Trustee's discount rate in effect at the time Debtors' petition was filed.[6] The Court then entered an "Order Confirming Plan" which stated, in pertinent part:

> No real estate creditor shall ever assess, charge or collect, from either the Debtor or the real estate collateral any assessments, fees, costs, expenses or any other monetary amounts, exclusive of principal, interest, taxes and insurance, that arose from the date of filing of the bankruptcy petition to the entry of the Order of Discharge except as may be allowed by the court order or an allowed proof of claim.[7]

Almost four years passed without any dispute from the parties. There is no indication from the docket of Debtors' case that they were ever delinquent with their plan payments. On July 8, 2020, the Chapter 13 Trustee filed a Notice of the Chapter 13 plan approaching completion.

The next day, Debtors' attorney filed his application for compensation, asking for attorney's fees for the time spent litigating the second amended plan. Debtors' counsel reported that he did not request the fees at the time they were incurred because he did not want to risk the feasibility of the plan, but that the Chapter 13 Trustee had inadvertently overpaid attorney's fees to

---

[6] Doc. 109 p.6. The exact language of the plan is that the real estate creditors would be paid "through the plan the value of the collateral or the amount of the claim, whichever is less, unless otherwise specified." The plan then noted the value of the collateral (both the Wabash property and Debtors' residence), was $249,200, while CoreFirst's claim was $134,600. No distinction was made between Proof of Claim No. 4 or No. 5.

[7] Doc. 142 p.2.

counsel by $1250, and was seeking refund of the same. Rather than refund those fees, Debtors' counsel sought approval of additional fees of $1250, indicating they would be one-third of what was actually billed at the time of the contested confirmation of Debtors' plan. Counsel included an itemized record of his time.

A few weeks later, CoreFirst responded to Debtors' counsel's fee application, and filed a motion of its own. CoreFirst filed a "limited objection" to the application for compensation. First, CoreFirst stated that it did not object to counsel's request for additional fees of $1250. But CoreFirst objected to counsel retaining the $1250 that had already been paid to him because it stated it would be filing a motion for leave to amend its proof of claim and seek its own postpetition attorneys' fees and, therefore, it would be entitled to at least a portion of the $1250.

CoreFirst then filed a motion to allow an amended proof of claim to include postpetition attorneys' fees. That motion indicates that CoreFirst incurred postpetition fees of $34,694.09, more than three times that incurred by Debtors, although it had elected to "assess only one-half of those fees as costs payable" under the parties' note "related to" Proof of Claim No. 4, an amount equaling $17,347.05. CoreFirst then stated:

> In compliance with the Order Confirming Plan filed by the Court on October 26, 2016, CoreFirst seeks an order from the Court allowing the filing of an amended Proof of Claim, or similar relief,

8

that would allow CoreFirst to pursue its rights to collect the attorney fees incurred after the Petition Date under state law.
. . . CoreFirst does not seek any additional fees or costs related to Proof of Claim No. 5, which was secured solely by Debtors' primary residence.
. . . CoreFirst does not seek to have these additional amounts paid through the Chapter 13 Plan, but rather simply seeks an order confirming its rights to collect these fees outside the bankruptcy process, following the termination of the automatic stay.[8]

CoreFirst then specifically asks for two items: (1) an order permitting it to amend Proof of Claim 4 to assess the additional fees of $17,347.05, and (2) an order confirming the Bank's rights to pursue collection of the postpetition fees pursuant to state law following termination of the automatic stay.

The parties filed additional briefs on the legal issues herein, and the Court also held oral argument on the same.

## II.    Conclusions of Law

Contested matters concerning "the administration of the estate" and the "allowance or disallowance of claims against the estate" are core matters under 28 U.S.C. § 157(b)(2)(A) and (B) over which this Court may exercise subject matter jurisdiction.[9]

---

[8]  Doc. 183 p.2.

[9]  This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

## A.    CoreFirst's Motion to Amend its Proof of Claim No. 4.

CoreFirst seeks leave of this Court to amend its Proof of Claim No. 4 to include an additional $17,347.05 in postpetition attorneys' fees. The Court is faced with two questions: (1) can CoreFirst assert a claim for the fees it seeks; and (2) if it can, has CoreFirst satisfied the standards for a post-bar-date amendment of its claim?

### 1.    *Allowance of Postpetition Attorneys' Fees on a Full-Payment Real Estate Claim*

Under § 1327(a), the "provisions of a confirmed plan bind the debtor and each creditor." In addition, the Court's confirmation order for that plan is also binding: "[b]ecause a bankruptcy court's order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties, a confirmed plan, once final, is *res judicata* and its terms are not subject to collateral attack."[10] In Debtors' case, the plan modified CoreFirst's claim and provided for full payment of CoreFirst's entire allowed secured

---

[10]  *McDaniel v. Navient Solutions, LLC (In re McDaniel)*, 973 F.3d 1083, 1089 (10th Cir. 2020) (internal quotation omitted); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) ("But once the [confirmation order] became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." (internal quotation omitted)); *United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1209 (10th Cir. 1997) ("Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan.").

claim under § 1325(a)(5)(B); after completion of the plan payments, Debtors will receive a discharge of the underlying debt per § 1328(a).[11]

A creditor in this situation wishing to augment a prepetition claim with postpetition legal expenses, therefore, must do so under § 506(b) during the pendency of the bankruptcy case, because it would lose its right to do so under § 1328(a) after the conclusion thereof. The order confirming Debtors' plan enforces this statutory mandate: no mortgage creditor may "assess, charge or collect" attorneys fees or expenses from "the Debtor or the real estate collateral" if those fees arise postpetition and pre-discharge, unless those fees are "allowed by the court order or an allowed proof of claim."

"Interest, fees, costs, and charges that accrue after the petition has been filed, or post-petition, are permitted only if authorized under 11 U.S.C. § 506(b)."[12] Specifically, under § 506(b), a creditor with "an allowed secured claim" that is "secured by property" with a value "greater than the amount of

---

[11] *Padilla v. GMAC Corp. (In re Padilla)*, 389 B.R. 409, 423 (Bankr. E.D. Pa. 2008) ("In cases involving a 'payoff' of a secured creditor's entire allowed secured claim, courts have held that post-bankruptcy collection efforts or attempts to retain a lien against the property that secured the creditor's claim are inconsistent with the confirmed plan and § 1327(a).").

Under § 1325(a)(5)(B), a Chapter 13 debtor can provide for full payment of a secured creditor's entire allowed secured claim. To contrast, under § 1322(b)(5), a Chapter 13 debtor can cure a prepetition delinquency and maintain monthly payments postpetition, while the secured creditor retains its lien post-discharge. Section 1328(a) provides for discharge of debts treated under 1325(a)(5)(B), but excludes from discharge those debts provided for under § 1322(b)(5).

[12] *Rushton v. State Bank of S. Utah (In re Gledhill)*, 164 F.3d 1338, 1340 (10th Cir. 1999).

such claim," will be permitted to recover "any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose." The Tenth Circuit has stated that four requirements must be met for the allowance of fees to a secured creditor: "(1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees, costs, or charges must be provided for under the agreement or state statute under which the claim arose; and (4) the fees, costs and charges sought must be reasonable in amount."[13]

It is undisputed that CoreFirst has an allowed secured claim and that CoreFirst is oversecured. CoreFirst has the burden of establishing its entitlement to fees and the reasonableness of the fees sought.[14]

CoreFirst states, without pointing to the specific language from the note or mortgages supporting its claim, that it is entitled to collect "all attorney fees incurred in collecting on the promissory note and enforcing its rights under the mortgage."[15] The note does permit CoreFirst to collect the

---

[13] *Eastman Nat'l Bank v. Sun 'N Fun Waterpark, LLC (In re Sun 'N Fun Waterpark, LLC)*, 408 B.R. 361 (10th Cir. BAP 2009).

[14] *In re Biazo*, 314 B.R. 451, 460-61 (Bankr. D. Kan. 2004).

[15] Doc. 183 p.2. Generally, simply stating that the documents attached to a proof of claim provide for fees, without more, is not enough. The Court expects the parties to identify for it the specific language addressing fees. *See In re Biazo*, 314 B.R. at 461 ("Although [the creditors' law firm] attached various mortgage documents to its motions, it failed to identify in the motions any language in the documents that might authorize its clients to collect attorney fees and costs, or even allege that they contain such language.").

12

"reasonable costs incurred in the collection" of its note, but the Court has some concern about whether the note's provision for fees incurred in the collection process would really cover the scenario herein. In this case, the fees were incurred postpetition in the confirmation process, not in the collection process that occurred prepetition. In addition, CoreFirst performed no analysis of the fee provisions in any of the mortgages securing the note. The Court had to dig through the attachments to Proof of Claim No. 4 just to find the relevant provisions. Under § 506(b), the parties' underlying agreement must specifically provide for postpetition fees.[16] The mortgages all have different language concerning fees, again, none of which CoreFirst has parsed.

In addition, under both § 506(b) and the parties' agreement, the fees incurred must be reasonable. As one bankruptcy court noted, the "mere fact that a legal action is initiated based on a contract which allows for the reimbursement of attorney fees and costs does not mean that the fees and costs incurred in connection with each cause of action or defense are reimbursable."[17]

Whether fees are reasonable is dependent on the facts of a particular case, and the Court concludes CoreFirst's litigation strategies and its fees

---

[16] *In re Gledhill*, 164 F.3d at 1340.
[17] *In re Mkt. Ctr. E. Retail Prop., Inc.*, 433 B.R. 335, 370 (Bankr. D.N.M. 2010).

13

incurred postpetition, were not reasonable in this case. First, CoreFirst enjoyed a substantial equity cushion for its claims. Combining both Proof of Claim No. 4 and Proof of Claim No. 5, CoreFirst was owed $133,410.59. But the collateral securing those claims was valued by CoreFirst at $249,200, giving CoreFirst more than $115,000 as an equity cushion. Just because CoreFirst was oversecured and *could* add attorneys' fees on its claim does not mean that it should have. An oversecured creditor does not have a blank check.[18] Yes, Debtors amended their income and expense schedules multiple times postpetition after feasibility had been challenged. But Debtors do not have "typical" jobs – they run their own business, work at home, and pool family income. In this Court's experience, no debtor is accustomed to having to account for each penny just because a bankruptcy petition is filed. Importantly though, Debtors had made consistent payment on their debt to CoreFirst for twenty years, never missing a monthly payment. The scorched-earth strategy exhibited by CoreFirst postpetition was excessive considering the circumstances.

---

[18] *See In re Latshaw Drilling, LLC*, 481 B.R. 765, 798 (Bankr. N.D. Okla. 2012) ("Bankruptcy courts have broad discretion to determine whether certain charges to the debtor are reasonable under § 506(b). Section 506(b) does not provide an oversecured creditor with a 'blank check' to act without regard to the reasonableness of strategies or positions taken, of time spent, or of the number of lawyers engaged. A rule of reason must be observed, in order to avoid such clauses becoming a tool for wasteful diversion of an estate at the hands of secured creditors who, knowing that the estate must foot the bills, fail to exercise restraint." (internal quotations omitted)).

Case 15-41155    Doc# 203    Filed 11/16/20    Page 14 of 22

Furthermore, the Court made very clear that the feasibility of Debtors' Chapter 13 plan had generally been established in the first trial on confirmation, save for a small technical correction. The amended plan was necessary only to deal with a very small technical shortfall. Yet CoreFirst not only objected to the amended plan, it forced a trial on essentially the same issues, with repetitive and argumentative questioning. The litigation occurring after Debtors filed their second amended plan on September 8, 2016, was not cost justified, and the fees incurred beyond that point certainly were not reasonable.[19]

In addition to challenging the reasonableness of CoreFirst's fees, Debtors also argue that CoreFirst is barred from seeking attorneys' fees by Federal Rule of Bankruptcy Procedure 3002.1. Subsection (a) of Rule 3002.1 states that the Rule applies in Chapter 13 cases "to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments." Subsection (c) of that Rule then states:

> **(c) Notice of fees, expenses, and charges**
> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after

---

[19] *See, e.g., In re Mkt. Ctr. E. Retail Prop., Inc.*, 433 B.R. at 374 ("It is inherently unreasonable to ask a debtor to reimburse attorney's fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved.").

15

the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. *The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.*[20]

CoreFirst's itemization of fees indicates the fees requested were all incurred on or prior to December 18, 2017, far more than 180 days ago. Debtors note that Proof of Claim No. 4 is secured in part by a security interest in Debtors' principal residence and, therefore, the request for additional fees is untimely made.

The Court concludes, however, that Rule 3002.1 does not apply. Subsection (a) of the Rule specifically applies only to claims "for which the plan provides that either the trustee or the debtor will make contractual installment payments." As noted above, this is not a case where Debtors are making contractual installment payments. Debtors instead confirmed a plan which provided for full payment of CoreFirst's entire allowed secured claim over the life of the plan under § 1325(a)(5)(B). Rule 3002.1 specifically states that it applies to residential mortgages where the debtor makes monthly contractual payments; not the situation herein.[21]

---

[20] Emphasis added.

[21] Because the Court concludes that Rule 3002.1 does not apply to full payment secured claims, it need not reach the more difficult question arising under subsection (c) of Rule 3002.1—namely whether CoreFirst's claim, secured by both Debtors' principal residence *and* the Wabash property, would be subject to the 180-day bar if subsection Rule 3002.1 applied to the claim.

16

Regardless of Rule 3002.1, CoreFirst has not shown that it is entitled to postpetition attorneys' fees for its claim under § 506(b). CoreFirst made no effort to show how it is entitled to the postpetition fees and did not carry its burden to show that the fees incurred were reasonable.

### 2. *Post-Bar-Date Amendment of CoreFirst's Claim*

Again though, not only must CoreFirst show it is entitled to attorneys' fees, it must also show it should be permitted to amend its claim at this late date. The Court rejects CoreFirst's request for a post-bar-date amendment and therefore denies in whole the motion to amend CoreFirst's Proof of Claim No. 4 on this alternate basis.

Debtors filed their Chapter 13 petition on November 13, 2015, and a deadline of March 14, 2016 was set to file a proof of claim.[22] As noted above, CoreFirst timely filed two claims—on March 14, 2016—but on the eve of the completion of Debtors' case, on July 31, 2020, sought leave to amend Proof of Claim No. 4 to add $17,347.05 in attorneys' fees to that claim, an increase of 13.4 percent to their $129,789.12. The Chapter 13 Trustee had just filed his notice that plan payments were approaching completion, and over four years had passed since the claims bar date. CoreFirst seeks leave of the Court to amend its claim, but presents no persuasive authority for doing so.

---

[22] Doc. 10.

The claims bar date in a Chapter 13 case is "an integral part of the reorganization process."[23] Debtors rely on the claims bar date in their efforts to plan their reorganization. Both the Chapter 13 Trustee and other creditors rely on the claims bar date as well. Whether to grant a creditor's motion to amend a proof of claim is a discretionary decision of the bankruptcy court.[24]

Generally, leave to amend a claim is freely allowed, but only in certain circumstances. The Tenth Circuit has said: "Leave to amend in a straight bankruptcy proceeding is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim."[25]

First, the Court notes that none of those circumstances are present herein. This is not a situation where there was a defect in the original claim that CoreFirst needs to fix. CoreFirst is not describing its original claim with more particularity or setting forth a new theory of recovery on the same facts;

---

[23] *In re Coover*, No. 06-40176, 2006 WL 4491439, at *5 (Bankr. D. Kan. Sept. 28, 2006) ("A bar date order does not function merely as a procedural gauntlet, but as an integral part of the reorganization process." (internal quotations omitted)).
[24] *Id.* ("The decision to grant or deny an amendment to a timely-filed proof of claim rests with the sound discretion of a bankruptcy judge."); *see also LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1473 (10th Cir. 1983) ("The determination of whether to grant or deny leave to amend is within the discretion of the court and the court's decision relative to an amendment is subject to reversal only for abuse of that discretion.").
[25] *LeaseAmerica Corp.*, 710 F.2d at 1473.

18

it is adding on a new component to its claim. This was a purposeful decision to wait more than four years to assert a claim for attorneys' fees. For what reason, the Court can only speculate, but regardless, it is certainly not a situation where the Tenth Circuit has stated that amendment of a claim should be freely allowed.

In addition, the Tenth Circuit has also cautioned that leave to amend should not be granted when it "would be prejudicial to the opposing party."[26] Some bankruptcy courts apply a two-part test to amendment of claims, namely whether "there was timely assertion of a similar claim or demand evidencing an intention to hold the estate liable," and if so, "whether it would be equitable to allow the amendment."[27]

Regarding the first part of the test, in its objection to confirmation of Debtors' second amended plan, CoreFirst did "reserve the right" to seek postpetition attorneys' fees and expenses as an oversecured creditor.[28] But that was four years ago. And regardless, CoreFirst fails the equitable nature

---

[26] *Id.* ("leave to amend will be denied if it would be prejudicial to the opposing party").

[27] *In re Coover*, 2006 WL 4491439, at *5 ("When deciding whether to permit an amendment to a proof of claim, a bankruptcy court is guided by a two-prong test. A court must first look to whether there was timely assertion of a similar claim or demand evidencing an intention to hold the estate liable. If there was such a timely assertion, the court then examines each fact within the case and determines whether it would be equitable to allow the amendment." (internal quotations omitted)).

[28] Doc. 120 p.3.

of the test. Regarding "balancing the equities," the Court considers: "(1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the creditor's inability to file the amended claim at the time the original claim was filed."[29]

The Court concludes that significant prejudice to Debtors would occur if CoreFirst was permitted to amend its claim so significantly at this late date. Debtors proceeded faithfully under their confirmed plan for more than four years, to get to the end of their case and only then hear from CoreFirst that it would be pursuing fees. CoreFirst gives no reason for its dilatory behavior and no justification for failing to file a motion seeking amendment of its claim more than four years ago. CoreFirst argues that the Wabash property is commercial property, and they "merely" seek to pursue their claim for fees against that property in state court once Debtors' receive their discharge. But it would be patently unfair to Debtors to permit amendment at this point at the end of Debtors' case, when Debtors have spent their entire Chapter 13

---

[29] *In re Coover*, 2006 WL 4491439, at *5 (internal quotations omitted). The bankruptcy court in *Coover* stated: "these considerations really come down to two questions. First, is the creditor attempting to stray beyond the perimeters of its original proof of claim, effectively filing a new claim, and what is the degree and incidence of prejudice caused by the creditor's delay." *Id.*

case thinking they were paying a 100% plan and would enjoy their fresh start once all Chapter 13 plan payments were made. Allowing amendment of the claim to permit CoreFirst to seek fees against the Wabash property would be the very embodiment of prejudice to the opposing party. As a result, the Court rejects CoreFirst's request for a post-bar-date amendment of its claim.

## B. Debtors' Counsel's Application for Fees

The Trustee has inadvertently overpaid Debtors' counsel by $1250 and is asking for refund of the same. Rather than refund those fees, Debtors' counsel filed an application for compensation asking for the Court's approval of an additional fee in that amount, to compensate counsel for the fees incurred in litigating the second objection to confirmation filed by CoreFirst.[30] Debtors' counsel indicated the $1250 would be one-third of what was actually billed at the time of the contested confirmation of Debtors' plan, and included an itemized record of his time. The only objection to Debtors' application is from CoreFirst, who filed a limited objection stating that it did not object to counsel's request for additional fees of $1250, but that it objected to counsel retaining the $1250 that had already been paid to him because of CoreFirst's motion seeking leave to amend its proof of claim and seek its own postpetition attorneys' fees.[31]

---

[30] Doc. 180.
[31] Doc. 184.

Case 15-41155    Doc# 203    Filed 11/16/20    Page 21 of 22

Because the Court now enters this Order denying CoreFirst's motion to amend its claim, CoreFirst's only objection to Debtors' motion has been overruled. Debtors' application for compensation is properly supported, and is granted.

## III. Conclusion

The Court denies CoreFirst's motion to allow an amended proof of claim to include postpetition attorneys' fees.[32] CoreFirst has not shown that it is entitled to the fees or to the post-bar-date claim amendment.

Because no objection to Debtors' application for compensation[33] remains, the application is granted.

**It is so Ordered.**

###

---

[32] Doc. 183.
[33] Doc. 180.